IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

APPEAL No. 22-1654

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL SANTANA-AVILÉS,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRIEF FOR APPELLEE

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# TABLE OF CONTENTS

Jurisdictional Statement .......................................................................1

Statement of the Issue on Appeal .........................................................2

Statement of the Case ...........................................................................3

Summary of the Argument.....................................................................12

Argument ...............................................................................................15

The district court did not abuse its discretion in its evidentiary
decisions during the trial below and, even if there was an
evidentiary error, it was harmless given the remainder of proof of
Santana's culpability .................................................................15

    A.    Santana's self-serving statement was not an excited
utterance .......................................................................16

    B.    Technician Rivera's email was properly admitted as a
prior consistent statement under Rule of Evidence
801(d)(1)(B) ..................................................................22

    C.    Any error in the district court's evidentiary
determinations was harmless...................................................25

Conclusion................................................................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

DiTomasso v. United States, 565 U.S. 1189 (2012)............................................22

Imbert v. Kenneway, 603 F. Supp. 3d 2 (D. Mass. 2022) ................................19

United States v. Alexander, 331 F.3d 116 (D.C. Cir. 2003) ............................16

United States v. Bercier, 506 F.3d 625 (8th Cir. 2007)....................................19

United States v. Burgos-Montes, 786 F.3d 92 (1st Cir. 2015) .........................15

United States v. Chiu, 36 F.4th 294 (1st Cir. 2022)....................................... 23-25

United States v. DiTomasso, 621 F.3d 17 (1st Cir. 2010)................................21

United States v. Feola, 420 U.S. 671 (1975) .......................................................26

United States v. Hayes, 561 F. Supp. 3d 154 (D.N.H. 2019)..................... 19-20

United States v. Luna, 649 F.3d 91 (1st Cir. 2011) ..........................................26

United States v. Magnan, 863 F.3d 1284 (10th Cir. 2017) ..............................20

United States v. McBride, 962 F.3d 25 (1st Cir. 2020) ......................................3

United States v. Ortiz-Cintron, 461 F.3d 78 (1st Cir. 2006) ...........................17

United States v. Rivera-Carrasquillo, 933 F.3d 33 (1st Cir. 2019)........... 26, 28

United States v. Sewell, 90 F.3d 326 (8th Cir. 1996) ........................................18

United States v. Taveras, 380 F.3d 532 (1st Cir. 2004)......................... 16, 19-20

United States v. Torres-Pérez, 22 F.4th 28 (1st Cir. 2021)...............................15

United States v. Velazquez-Fontanez, 6 F.4th 205 (1st Cir. 2021) ........... 15, 25

**FEDERAL STATUTES**

18 U.S.C. § 111(a)(1) ............................................................................3, 26

18 U.S.C. § 111(b)..................................................................................3, 26

18 U.S.C. § 3231.........................................................................................1

28 U.S.C. § 1291.........................................................................................1

**FEDERAL RULES**

Fed. R. Crim. P. 52(a) ..............................................................................25

Fed. R. Evid. 801(d)(1)(B) .......................................................................10

Fed. R. Evid. 803(2) .................................................................................16

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291. The district court sentenced Appellant Miguel Santana-Avilés and entered its judgment on August 8, 2022. (DE 201).[1] Appellant filed a timely notice of appeal. (DE 202).

---

[1] "DE" refers to docket entries before the district court in District of Puerto Rico criminal case No. 21-cr-30; "AB" is the Appellant's Brief.

## STATEMENT OF THE ISSUE ON APPEAL

**Whether the district court abused its discretion in (A) excluding hearsay statement by Santana denying involvement in the attack on the corrections officer or (B) admitting an email regarding the technical difficulties that the detention center had with its surveillance recording system after the witness's credibility was attacked on that topic; and (C) whether any evidentiary errors, if there were any, were harmless.**

**Procedural History**

A grand jury returned a one-count indictment against appellant Miguel Santana-Avilés and co-defendant Héctor Maldonado-Maldonado for assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. §§ 111(a)(1) and (b). (DE 1). Santana's co-defendant, Maldonado, entered into a plea agreement (DE 140) while Santana proceeded to trial. Following the trial, the jury returned a verdict of guilty for the charge against Santana. (DE 162).

**Attack on a Correctional Officer[2]**

On August 20, 2020, correctional officer Efrén Rosario was working in the Metropolitan Detention Center in Guaynabo, Puerto Rico (MDC Guaynabo), when he had to conduct an inmate count of a block of the facility. (DE 213 at 43). After the lockdown for the count was announced, he and an officer in training, Marianés Santana,[3] walked along the block, cell by

---

[2] This Court views the evidence at trial in the light most favorable to the verdict. *See United States v. McBride*, 962 F.3d 25, 28 (1st Cir. 2020).

[3] While there is no relation (DE 216 at 30), because Marianes Santana shares part of the appellant's last name, we refer to her as Officer Santana and the appellant simply as Santana.

cell, confirming that each inmate was in their assigned cell and locking the cell door. (DE 213 at 44–46). When the officers arrived at cell 207—where Santana, Maldonado, and a third inmate resided—only Santana was in the cell. (DE 213 at 47–50). Officer Rosario asked him to stand outside while he looked for the other two inmates, but there was no one else in the cell. (DE 213 at 50).

What Officer Rosario did see was an extra pillow on Maldonado's bed. (*Id.*). The mattresses in the cell "already have their own pillow." (DE 213 at 51). And MDC Guaynabo policy was that inmates could not have an additional pillow because it could "be used in order to hide drugs or other types of contraband." (*Id.*). The facility's policy required Officer Rosario to seize the extra pillow and remove it from the cell. (*Id.*). So that was what he did. (*Id.*).

As Maldonado returned to the cell, he yelled, "you're always putting your foot in the way of the inmate motherfucker." (DE 213 at 52–53). Maldonado approached Officer Rosario and punched him in the face. (DE 213 at 53). Officer Rosario staggered backwards, and then Santana held Officer Rosario from behind, keeping him in place and preventing him from

moving his arms. (*Id.*). Maldonado continued punching Officer Rosario several times as Santana encouraged Maldonado by saying "hit him" approximately twice. (DE 213 at 53–57 (testimony of Officer Rosario); *see also* DE 216 at 36–38 (testimony of Officer Santana); DE 216 at 82–87 (testimony of Officer Figueroa)). During the attack, the officer in training, Officer Santana, gave verbal commands to the two inmates to let go of Officer Rosario. (DE 213 at 55, 57). She also attempted to grab Maldonado to stop the assault, but she was overpowered, and the inmates persisted. (DE 213 at 57; DE 216 at 37–38). At one point, Officer Rosario tried to lean forward to force Santana over his shoulder. (DE 213 at 55). He was unsuccessful, and Maldonado placed him in a headlock and continued to hit him. (DE 213 at 55–56). Maldonado held Officer Rosario hard, making it difficult for him to breathe. (DE 213 at 55). Eventually, Officer Rosario was able to wriggle free enough to press his emergency button. (DE 213 at 58). Officer Santana pressed her emergency button as well. (DE 216 at 38). Other officers came to assist Officer Rosario and used pepper spray to get the inmates off him. (DE 213 at 59).

After breaking up the altercation, the prison staff took Maldonado and Santana to the medical unit to be treated for the pepper spray. (DE 213 at 59–60). The medical personnel evaluated Officer Rosario as well and determined that he should go to a hospital. (DE 213 at 60). He had injuries to his head and neck, and he experienced painful headaches for weeks. (*Id.*).

**The Trial**

In his opening statement, Santana asked the jury to consider the lack of video evidence despite cameras in the area of the attack:

> The only videos you can't see are the videos of the actual vicious, savage beating that continued no matter having three people giving them orders to stop, obey, throw yourself on the floor, stop this. They just kept on beating him and beating him.
>
> And that video is the only video that we're going to be able to see, the only video that could have told the truth of what happened there. . . . You will see from the pictures that door 207 is this door. Door 206 is this door. And just by chance, the camera was right here, right in front of both cells in which the alleged attack happened.
>
> The picture is worth a thousand words. It is better to show something than to talk about or explain it. . . . Think about

what Mr. [Rivera],[4] who will be the [IT][5] witness that the government is going to bring here and say that, unfortunately, cameras at MDC Guaynabo that day were working in unit 1-B, the unit -- the cameras were working, but unfortunately, for those -- by the way that he said it, it could have been like ten minutes. But for the two, three minutes that this might have happened, that camera just stopped working.

That's something I think you guys should be very careful looking for an explanation that the witness will sit down and try to give.

(DE 213 at 33–35).

The government called five witnesses from MDC Guaynabo to make its case. Officer Rosario and Officer Santana testified regarding the attack (DE 213 at 36–102; DE 216 at 29–59), Officer David Figueroa and Officer/nurse Keyla Michelle Rivera testified about having responded to the attack (DE 216 at 70–111; DE 216 at 155–73), and electronic technician

---

[4] Though, according to the transcript, the opening statement referred to "Mr. Rosario," it is likely that the defense intended to refer to electronic technician Norman Rivera, who testified regarding the detention center's security camera recording system.

[5] The transcript reads "ID" witness, but it is more likely in context to be "IT" witness.

Norman Rivera testified regarding the malfunctions in the detention center's security camera recording system. (DE 216 at 112–52).

On the second day of trial, Officer Figueroa testified outside the presence of the jury regarding a statement Sanatana had made when Officer Figueroa responded to the scene. (DE 216 at 3–17). Officer Figueroa testified that upon seeing Maldonado hitting Officer Rosario, he pepper sprayed Maldonado after making at least five verbal commands for Maldonado to cease. (DE 216 at 5–6). Then, he pepper sprayed Santana who he observed continuing to hold Officer Rosario. (DE 216 at 6). Officer Figueroa testified that upon being pepper sprayed, Santana said in a "normal tone": "I didn't do nothing. It wasn't me." (DE 216 at 7–8).

The parties presented argument to the court about whether Santana's statement was inadmissible as a self-serving hearsay statement or whether it was an excited utterance. (DE 216 at 17–27). The court, after explaining the caselaw that it reviewed in evaluating the statement, concluded that it was not admissible because it was not related to a startling event. (DE 216 at 60–69). "[T]he testimony of Officer Figueroa was that the defendant said what he said in a calm voice; that he was not agitated; that he was not in a physical

struggle." (DE 216 at 68). The court also considered that Santana was able to regain his ability to analyze the circumstances and provide an exculpatory statement in part because it was clear that he would be "subjected to administrative proceedings and/or criminal charges." (DE 216 at 66–67). So, the court concluded, "there [wa]s no evidence that the self-serving statement resulted from an uncontrolled, altered, excited emotional state of mind . . . And I think that the defendant was able to understand what he was doing at the time." (DE 216 at 69). So the court excluded the statement. (*Id.*).

Before the jury, technician Norman Rivera explained that the detention facility, MDC Guaynabo, updated its security camera recording system in the summer of 2020. (DE 216 at 116–17). And because there were problems with the recording system (that took approximately a year to fix), the attack on Officer Rosario was not recorded. (DE 216 at 118–19).

The defense cross-examined technician Rivera regarding the absence of recorded video footage of the incident, and asked why Rivera had reported that there were no complaints of malfunctions on August 19 and 20

of 2020.[6] (DE 216 at 133–36). Seeing his credibility attacked, on redirect, the government moved to introduce an email (DE 163-10) from technician Rivera from October 2020 that described the problems with the recording system dating back to July 2020. (DE 216 at 137–38).[7] The government moved at sidebar to introduce the email under Federal Rule of Evidence 801(d)(1)(B). (DE 216 at 137). The defense argued against its admission at sidebar and reiterated its objection after the government laid the foundation for the email with the witness. (DE 216 at 143–44). After clarifying with the witness that the "e-mail communication [was] in regard to the subject matter which you have been testifying," the court agreed with the government and admitted the email into evidence. (DE 216 at 144).

---

[6] At several points during cross-examination, defense counsel used camera interchangeably with recording system, a source of confusion that led to objections and the district court attempting to clarify the difference. (DE 216 at 127–36; *see, e.g.*, DE 216 at 136 ("So a camera may be functioning, but not recording?")).

[7] In an apparent typo or misreading of the record, Santana suggests that the relevant email was from October 23, 2022. (AB 22 n.7). But the email was from October 2020, and the very footnote in which Santana makes this point shows that it could not have been from October 2022 because the trial was in March 2022. (*Id.*; *see also* Gov't Ex. 10, DE 163-10).

Officer and BOP nurse Rivera testified that she responded to the scene after the alarm sounded. (DE 216 at 157–58). By the time she got there, Maldonado and Santana had been restrained and were laying on the floor. (DE 216 at 158). Upon seeing the inmates on the floor, she reported back to the medical unit, having realized that they would need to be decontaminated and assessed for injuries. (DE 216 at 159). Santana had a runny nose and his face was red with some orange coloring from the pepper spray. (DE 216 at 165). He also complained of his eyes itching. (DE 216 at 169). Officer Rivera had Santana use an eye wash station to clean the pepper spray from his eyes. (DE 216 at 165). Aside from the effects of the pepper spray, Officer Rivera did not notice any injuries on Santana. (DE 216 at 160).

After the government presented its five witnesses, it rested. (DE 216 at 174). The defense did not present any witness; it rested as well. (*Id.*). The jury found Santana guilty. (DE 212 at 4–6).

This appeal follows.

## SUMMARY OF THE ARGUMENT

This Court should affirm Santana's conviction because his two evidentiary challenges fail under precedent and a straightforward application of the Rules of Evidence.

First, the district court did not abuse its discretion in excluding Santana's self-serving statement that "[he] didn't do nothing. It wasn't [him]." (DE 216 at 7–8). The very nature of his statement—denying culpability upon receiving a consequence for his actions—demonstrates that he understood what he was saying and had motivation to lie to avoid further punishment. It was not a statement made under such stressful conditions that it would be impossible to tell a falsehood, and the court found that he was calm when he made the statement. Santana does not argue that the district court's factual findings underpinning its decision were clearly erroneous. His statement was made after conscious reflection caused him to think that his best move was to deny involvement. It was therefore not an excited utterance but an inadmissible, self-serving hearsay statement.

Second, the email communication by technician Rivera was admissible because the defense suggested, at least implicitly, that his testimony was

fabricated. Technician Rivera testified that MDC Guaynabo had problems with the security camera recording system starting in July 2020, a month before the assault. The suggestion that it was too convenient that there was no video footage of the assault necessarily implied that MDC Guaynabo hid or destroyed the relevant evidence. The related implication is that the detention center, including technician Rivera, came up with the story of technical difficulties with the camera system in anticipation of trial. So technician Rivera's email corroborating that the detention center had had glitches following the updates to their system starting the month before the assault was properly admitted to rebut the idea that technical difficulties with the recording system were fabricated. The email was properly admitted as a prior consistent statement.

Even if the district court erred in making these evidentiary rulings, any error did not sway the jury's decision. The government provided a coherent picture of the attack on Officer Rosario. Santana offers no reason to think that if his denial was heard by the jury that it would undercut the consistent depiction presented by the government witnesses. Likewise, there was no reason to think if the technician's email had been excluded that the jury

would doubt his testimony that the difficulties with the recording system began in July 2020 and explained the lack of video footage of the assault. The alleged evidentiary errors did not sway the guilty verdict against Santana.

This Court should affirm.

<center>**ARGUMENT**</center>

**The district court did not abuse its discretion in its evidentiary decisions during the trial below and, even if there was an evidentiary error, it was harmless given the remainder of proof of Santana's culpability**

## Issue

Santana contends that the district court erred by excluding his statement denying culpability after being pepper sprayed, arguing that it should have been admitted as an excited utterance. (AB 16–19). He also argues that the district court erred in admitting an email of a government witness as a prior consistent statement under Rule of Evidence 801(d)(1)(B). (AB 19–24). And he says that these supposed errors were prejudicial by eliminating "points of attack" for the defense. (AB 25–26).

## Standard of Review

This Court generally reviews a district court's evidentiary ruling for abuse of discretion. *United States v. Torres-Pérez*, 22 F.4th 28, 30 (1st Cir. 2021). The factual findings underlying those rulings are reviewed for clear error. *United States v. Burgos-Montes*, 786 F.3d 92, 114 (1st Cir. 2015). A harmless evidentiary error does not require reversal. *United States v. Velazquez-Fontanez*, 6 F.4th 205, 219 (1st Cir. 2021).

## Discussion

### A.  Santana's self-serving statement was not an excited utterance

Reality set in for Santana after watching Maldonado being pepper sprayed and receiving a dousing of pepper spray himself. Denying involvement in the attack at that point was merely meant to lessen the repercussion that he would receive. It was motivated by self-interest, not the stress of an exciting event. So the denial was properly excluded.

Rule 803 of the Rules of Evidence provide that certain statements are not excluded by the rule against hearsay, including: "Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "The rationale underlying the 'excited utterance' exception is that excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable." *United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004) (quoting *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003)).

In this case, Santana could not show that his statement was made under the stress of a startling event. The relevant statement was his denial: "I didn't do nothing. It wasn't me." (DE 216 at 7). When he made that statement, he did so in a "normal tone" with a "calm" "demeanor." (DE 216 at 8). He did not make the statement in an elevated or emotional voice. (*Id.*). And because Officer Figueroa had just observed Santana holding Officer Rosario's arms (DE 216 at 5), Officer Figueroa's testimony was that the denial was inconsistent with what he witnessed— it was a lie. (DE 216 at 8). The district court credited Officer Figueroa's testimony when it concluded that there was no indication that "the self-serving statement resulted from an uncontrolled, altered, excited emotional state of mind . . . And I think that the defendant was able to understand what he was doing at the time." (DE 216 at 69). Present and tasked with making the evidentiary determination, "the district judge was fully entitled to credit [Officer Figueroa's testimony]." *United States v. Ortiz-Cintron*, 461 F.3d 78, 80 (1st Cir. 2006). Santana's "monotone" statement (DE 216 at 68) was not under the stress of a startling event or condition and therefore not admissible as an excited utterance.

Nor can Santana show that the district court clearly erred when it determined that his statement showed reflection and self-interest. (DE 216 at 69). In *United States v. Sewell*, the Eighth Circuit discussed whether an analogous denial was an excited utterance when the defendant sought to pass blame to his brother for the pistol that was found in his car. 90 F.3d 326 (8th Cir. 1996). The Eighth Circuit concluded that his statement was not an excited utterance, reasoning: "Where incriminating evidence is discovered in one's possession, it requires only the briefest reflection to conclude that a denial and plea of ignorance is the best strategy. This hardly comports with the spirit of disinterested witness which pervades the rule." *Id.* at 327.

Santana's apprehension is similar to the defendant's arrest in *Sewell*. Even if there were evidence that Santana had been under the stress of an excited state, it would take "only the briefest reflection," *id.*, to conclude that denial of involvement was the best strategy. That Santana's statement denied involvement demonstrates on its face that he was able to contemplate the cost or benefit of his involvement in the attack. The district court considered that Santana knew he was going to face punishment for his involvement. (DE 216 at 66–67). Because the statement was "influenced by

self interest," *Taveras*, 380 F.3d at 537, it does not come with the justification for rendering an utterance reliable.

The events in this case were also meaningfully distinct from those in *United States v. Hayes*, where the district court determined that a prisoner's statement following an altercation was an excited utterance. 561 F. Supp. 3d 154, 159 (D.N.H. 2019). There, one of the correctional officers described the defendant-prisoner as "tense and trembling" after the altercation, "to the degree that they inquired about his ability to maintain composure while walking." *Id.* at 160. The district court cited those descriptions to find that the defendant-prisoner was subject to the influence of the altercation's stress when he said that he "had no choice." *Id.* at 159–60.

The defendant-prisoner's visibly shaken state in *Hayes*, *id.* at 160, is in sharp contrast to Santana's "normal tone" and "calm" "demeanor." (DE 216 at 8); *see also United States v. Bercier*, 506 F.3d 625, 630 (8th Cir. 2007) (concluding statement was excited utterance where sexual assault victim made statement to boyfriend who described her as shaking, crying uncontrollably, having trouble breathing, and not able to stand); *Imbert v. Kenneway*, 603 F. Supp. 3d 2, 7 (D. Mass. 2022) ("[Declarant] had allegedly

observed, just moments earlier, a murder, which is undoubtedly a startling

event, and additional testimony supported the belief that [he] was alarmed

when he made the statement."). That is not to say that being pepper sprayed

could never cause the excitement and stress that could prompt an excited

utterance. But where the district court credited the testimony that Santana

did not appear to be shaken (DE 216 at 69), like the prisoner in *Hayes*, 561 F.

Supp. 3d at 160, and where the court concluded that Santana could reflect

and have self-interest in what he was saying (DE 216 at 69), the district court

did not abuse its discretion in finding it was not an excited utterance.[8]

---

[8] At one juncture, the district court in *Hayes* wrote that "the self-serving nature of Hayes's statement" went to the weight of the statement, rather than its admissibility. 561 F. Supp. 3d at 160. But at another juncture, it recognized that courts look to the potential for self-interest in determining whether a statement is an excited utterance to begin with and found that even if that defendant's statement was self-serving, it was outweighed by the evidence that he was under the stress of the altercation. *Id.* at 160 n.9. The court in *Hayes* does not cite any support the legal proposition that the self-serving nature of a statement goes to its weight rather than its admissibility; but there is substantial precedent that courts consider self interest in determining admissibility. *E.g.*, *Taveras*, 380 F.3d at 537; *United States v. Magnan*, 863 F.3d 1284, 1292 (10th Cir. 2017) (listing "the presence or absence of self-interest" as one of several factors to consider). Regardless, because the evidence in *Hayes* demonstrated that defendant-prisoner was shaken while the evidence in this case showed that Santana was not (DE 216 at 7, 69), *Hayes* is inapposite.

Nor can Santana show that the district court abused its discretion in describing the ambiguity of his denial. (*See* AB 18–19). Even his description of the court's explanation is inaccurate—he paints the district court as having found Santana was more worried about a "minor violation of prison regulations[] . . . than the very serious crime of assaulting a correctional officer." (AB 18). But what the district court actually said was that Santana's denial that he "didn't do nothing" was ambiguous and could have referred to the contraband or his role in the beating of Officer Rosario. (DE 216 at 67). The key point that the court was making was that in either case, Santana's denial indicated that he could reflect enough to understand he likely faced "administrative proceedings and/or criminal charges." (*See id.*). And because his statement evinced reflection, the court concluded that it did not have the requisite indicia of reliability that normally justifies excepting excited utterances from the rules against hearsay. (*Id.*).

Santana cannot show clear error in the factual underpinnings of the district court's decision; indeed, he does not even attempt to do so. *United States v. DiTomasso*, 621 F.3d 17, 26 n.7 (1st Cir. 2010) (noting the "familiar rule that issues not advanced in an appellant's opening brief are deemed

waived"), *vacated on other grounds*, 565 U.S. 1189 (2012). Given that the court believed that Santana was not under the stress of an exciting event and could reflect and speak in self-interest, there was no abuse of discretion.

## B. Technician Rivera's email was properly admitted as a prior consistent statement under Rule of Evidence 801(d)(1)(B)

The district court also did not abuse its discretion in permitting the email by technician Rivera under Rule 801(d)(1). Santana questioned technician Rivera's testimony that the facility's security camera recording system had problems starting the month before the attack on Officer Rosario. His cross-examination sought to imply that technician was either lying about the absence of a recording or the reason for that absence. So the email, Government's Exhibit 10, was properly admitted to rebut the suggestion that technician Rivera's testimony was a recent fabrication or that the absence of a recording was some sort of foul play.

Under Rule of Evidence 801(d)(1), a witness's prior statement qualifies as a hearsay exception "when (1) the declarant testifies at trial and is subject to cross-examination; (2) the prior statement is consistent with the declarant's trial testimony; and (3) the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or

improper influence or motive." *United States v. Chiu*, 36 F.4th 294, 300 (1st Cir. 2022) (internal quotations omitted).

Here, Santana emphasized in the opening statement that while the cameras were working in other parts of the prison (at times conflating camera with recording system), including the wing of the attack, the camera pointed at his cell was not working. (DE 213 at 34). After technician Rivera testified that he looked for a recording the day after the attack and discovered that there was no recording (DE 216 at 19), Santana crossed him about the absence of a recording: "Q. [Y]ou, in your report, stated that you have no documentation of the cameras that were functioning or not in unit 1-B on August 19 to the 20th, 2020; is that correct? A. That's correct." (DE 216 at 120–21). Santana pressed the point by suggesting that other cameras were working the day of the incident, just not the ones that could have captured the attack on Officer Rosario. (DE 216 120–21). Santana's questions only served to infer that the technical difficulties were a recent fabrication to argue at closing that the detention center either hid something or was lying about the reason for the lack of video evidence.

The first prong of Rule 801(d)(1)(B) is easily met because technician Rivera was present at trial and subject to cross-examination. *Chiu*, 36 F.4th at 300. Technician Rivera testified, prior to the introduction of his email, that the updates to the recording system had resulted in glitches and missing recordings starting in July 2020, a month before the attack. (DE 216 at 115–18). So the email that showed in the fall of 2020 that technician Rivera had been having problems with the system since July was consistent with his testimony, satisfying prong two of Rule 801(d)(1)(B). *Chiu*, 36 F.4th at 300. Finally, the email was offered to rebut an express or implied charge of recent fabrication or other improper motive. *Id.* The defense sought to suggest, at least implicitly, that it was a little too convenient that there was no video of the incident despite cameras in the area. So the introduction of the email was used to rebut that "inference" of "nefarious conduct or misconduct by the Bureau of Prisons at MDC." (DE 216 at 138).

Santana's arguments to the contrary are unpersuasive. He suggests that the defense did not imply fabrication or improper motive. (AB 20–22). But the record, viewed as a whole, negates that argument. Throughout the trial, Santana aimed to cast doubt on the bugs in the recording system,

implying that it was suspicious that many of the cameras yielded recordings on August 20, 2020, just not the one closest to the attack. (*See* DE 213 at 34; DE 216 at 120–21; DE 211 at 42, 46). Santana emphasized both the absence of the video recording and the absence of documentation on August 19, 20, or 21, 2020, stating that the particular camera had missing recordings. (DE 216 at 120–22). So technician Rivera's testimony regarding the problems dating back to July 2020 was called into question. And the email was consistent with that testimony. *Chiu*, 36 F.4th at 300.

The email was properly admitted to rebut the suggestion that technician Rivera was lying about the absence of a recording or the reason for the absence of a recording. The district court did not abuse its discretion in admitting the email.

### C. Any error in the district court's evidentiary determinations was harmless

In the event the district court did error in either or both of the challenged evidentiary rulings, any error was harmless, *See* Fed. R. Crim. P. 52(a), and harmless evidentiary errors do not require reversal. *Velazquez-Fontanez*, 6 F.4th at 219. "Nonconstitutional errors are harmless" if this Court can say "with fair assurance" that the errors did not "substantially sway" the

verdict. *United States v. Rivera-Carrasquillo*, 933 F.3d 33, 46–47 (1st Cir. 2019). The Court can say so here because the remainder of the evidence presented at trial conclusively showed that Santana and Maldonado attacked Officer Rosario on August 20, 2020.

To show that Santana was guilty of violating 18 U.S.C. §§ 111(a)(1) and (b), the United States needed to show that he "forcibly assault[ed], resist[ed], oppose[ed], impede[ed], intimidate[ed], or interfer[ed] with any person designated in section 1114 of this title [i.e., a federal officer] while engaged in or on account of the performance of official duties," and "inflict[ed] bodily injury." *United States v. Luna*, 649 F.3d 91, 98 (1st Cir. 2011). "All the statute requires is an intent to assault, not an intent to assault a federal officer." *United States v. Feola*, 420 U.S. 671, 684 (1975).

That Officer Rosario was a federal officer under section 1114 is not contested and shown through his testimony that he is a corrections officer with the Bureau of Prisons at MDC Guaynabo. (DE 213 at 37–38). That Santana and Maldonado inflicted bodily injuries against Officer Rosario is also uncontested and shown through Officer Rosario's testimony that he had bruising and scrapes on his face, and painful headaches for weeks. (DE 213

at 60; *see also* AB 9–10 (recognizing the bodily injury testimony)). The government showed that the pair of inmates intentionally assaulted Officer Rosario with the testimony of the four corrections officers that observed the attack and its aftermath. (DE 213 at 36–102; DE 216 at 29–59; DE 216 at 70–111; DE 216 at 155–73). Officer Rosario, Officer Santana, and Officer Figueroa all described that Santana's role in the assault was holding Officer Rosario's arms behind his back, effectively immobilizing Officer Rosario while Maldonado struck him. (DE 213 at 53–57; DE 216 at 36–38; DE 216 at 82–87). The government's presentation of evidence thus provided a clear and consistent picture of the attack to satisfy the elements of § 111.

Santana's assertion of prejudice is unavailing. He argues that the three "points of attack" for the defense were his denial, the absence of a video, and inconsistencies between the government witnesses. (AB 25). The district court's evidentiary rulings, he argues, deprived him of "two of the three," apparently referring to Santana's denial and the lack of video evidence. (*Id.*). But part of the reason this argument should fail is that there was no inconsistency between the government witnesses—and Santana certainly

does not identify any—such that the alleged errors could have undermined the government's case.

Nor can Santana claim that his denial would have had any serious effect on the government's witnesses' description of the events. Though Santana stated that "[he] didn't do nothing" and "[i]t wasn't [him]," (DE 216 at 7–8), Officer Figueroa testified to the obvious fact that he had just witnessed Santana hold Officer Rosario, inconsistent with his denial. (DE 216 at 8). Santana does not explain how his denial, if admitted, would have offered the jury another understanding of the events that was completely at odds with the testimonies of Officer Rosario, Officer Santana, and Officer Figueroa. Santana also does not argue, but seems to assume, that his denial was exculpatory. (*See* AB 25). But he does not explain why, given the consistent evidence against him, the jury would not simply interpret Santana as denying that he was the one striking Officer Rosario or, as Officer Figueroa testified (DE 216 at 8), denying all involvement in the attack despite knowing he was caught in the act. If there was an error in ruling that the denial was not an excited utterance, it did not "substantially sway" the jury's verdict. *Rivera-Carrasquillo*, 933 F.3d at 47.

Similarly, technician Rivera testified prior to the admission of his email that the detention center began having problems with its security camera recording system in July 2020, a month before the assault. (DE 216 at 115–18). As is required by Rule 801(d)(1)(B), the email that the government introduced to show a prior consistent statement was, by name and by definition, consistent with the initial testimony. So the jury had already been presented evidence that MDC Guaynabo began having these problems when it updated its security camera system. To the extent Santana argues that questioning on cross-examination cut against technician Rivera's testimony, Santana is undermining his own argument that he did not suggest technician Rivera's testimony about the absence of the recording or the reason for the absence of a recording was false or fabricated. (AB 21–22). Regardless, the government presented unrebutted testimony that explained why the detention center was missing video footage after updating its camera and recording system. (DE 216 at 115–18).

The government's case against Santana came from four corrections officers that provided a consistent picture of the assault and one technician explaining the absence of video evidence. The evidence was overwhelming

and nothing in Santana's cross of those witness undercut their testimony; indeed, he does not identify any inconsistencies. So any evidentiary errors, if there were any, did not sway the jury's verdict.

<div align="center">CONCLUSION</div>

The district court did not abuse its discretion in its evidentiary rulings. And any error would be harmless given the remainder of the United States' case against Santana. This Court should affirm.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this Tuesday, October 24, 2023.

<div style="margin-left: 40%;">

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

</div>

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Certificate of Compliance with Rule 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. AA P. 32(a)(7)(B) because:

   ☑ the brief contains <u>5,740</u> words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because:

   ☑ the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using <u>Book Antiqua</u> in <u>14 point</u>, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____ with _____.

Dated: October 24, 2023                     /s/ Gregory B. Conner
                                            Assistant United States Attorney

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 24, 2023, I filed the above brief with the Clerk of Court using the Court's electronic-filing system, which sent a notification of the filing to the appellant through his attorney of record, a registered user of the system.

/s/ Gregory B. Conner
Assistant United States Attorney